**William Marshall RUE**

v.

**Wesley Bernard SNYDER.**

**Civ. A. No. 4468.**

United States District Court
E. D. Tennessee, S. D.

Feb. 2, 1966.

Conrad Finnell, Cleveland, Tenn., for plaintiff.

Joseph F. DiRisio, Chattanooga, Tenn., Robert L. McMurray, Cleveland, Tenn.. for defendant.

FRANK W. WILSON, District Judge.

This is an action for alleged violation of the plaintiff's civil rights arising out of an arrest and imprisonment of the plaintiff by a city policeman in Cleveland, Tennessee. Jurisdiction purports to be based upon 42 U.S.C. § 1983, with the plaintiff relying upon the pendent jurisdiction of the Court in seeking recovery for an alleged false arrest, false imprisonment, and malicious prosecution. The action was tried by the Court sitting without a jury. Upon the record in

this cause, the Court makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

██ (1) The plaintiff is a 59 year old man who has lived all of his life in a small community near Cleveland, Tennessee. He is married and has two grown children. He appears to be a person of modest means and good character, this being his first encounter with the processes of the criminal law. For several years he appears to have been in semi-retirement, doing some carpentry and other odd jobs. Upon June 30, 1964, between 4:00 and 5:00 p. m. in the afternoon, he rode into Cleveland, Tennessee, with his daughter to do some shopping. Upon this same summer afternoon the defendant and his family were returning to their home in Cleveland from a boating trip, pulling their boat behind them. At this point both families were apparently at peace with the world, as befits a day in June, traveling side by side down the highway, that is until the highway narrowed from two lanes to one for traffic traveling toward Cleveland. Both cars arrived at this point at about the same time and in this apparently unpremeditated squeeze the plaintiff's daughter had to take to the shoulder of the road until she was able to drop in behind the defendant's automobile and boat. At this point, as so often happens when otherwise gentle men and women get behind the wheel of an automobile and find another motorist in their path, gentility and tranquility went out of the window and the plaintiff and his daughter felt that the situation called for their letting the defendant know in no uncertain terms of their extreme displeasure over developments. She hastened to pass the defendant, even though it meant passing in a no-passing zone, and as they passed the plaintiff let the defendant know in rather colorful language that he did not think much of the defendant's driving ability and he possibly embellished his view in this regard by questioning the defendant's paternity. Having thus relieved his mind, the plaintiff lapsed into silence, not again to audibly state his position until he found himself in jail, some several minutes and quite a few events later. But it was now the defendant's turn to become aroused and seek to overtake the car in which the plaintiff was riding, which he shortly did at a traffic light. At this point he attempted to have the plaintiff repeat his charges, but without success. The plaintiff apparently felt that he could not improve upon his first effort and that repetition would merely blunt the point of his former deft verbal thrust. At any rate, he remained silent. However, the defendant did succeed in getting rather specific directions where to go from the plaintiff's daughter before she departed from the scene. Either declining or ignoring these instructions, the defendant followed in pursuit, only to repeat the same performance at the next traffic light. The plaintiff and his daughter were apparently unaware that the defendant was a policeman, in addition to being a boating enthusiast, until he made them aware of this fact at the third red light when he succeeded in getting to the car as the plaintiff's daughter drove into a parking lot. The defendant upon arriving at the car immediately advised the plaintiff that he was under arrest and succeeded in removing him from the car with no more than might be considered the usual pulling, hauling, and confusion in making an arrest. The plaintiff claims to have scraped his head in getting out with brisk assistance from the defendant, but in any event, it was a minor trauma. The defendant then, with a firm grip upon the plaintiff's arm and belt, forcibly walked him across the parking lot to a taxi, pursued by the plaintiff's daughter, who in this confused situation alternately sought to either halt the arrest of her father or to ride the parties to jail in her car. The defendant elected to take his prisoner to jail by taxi, however, and probably wisely so, for he was having no problem with nor quarrel from his prisoner and had had none since their initial passing encounter upon the highway; whereas his relations with the daughter at this point were hardly cal-

culated to inspire confidence in her as a paddywagon operator. At the jail the defendant booked the plaintiff on a charge of disorderly conduct and public drunkenness and put him in jail where he remained from approximately 5:00 p. m. until 8:40 the same evening, at which time he was released upon a $20.00 cash bond. Upon learning of the public drunkenness charge, the family had arranged for the family doctor to examine the plaintiff, which he did around 8:00 that evening. He found no evidence of drinking on the part of the plaintiff and the Court could find precious little, certainly not sufficient to give rise to probable cause for believing that the plaintiff was publicly drunk while riding in his daughter's automobile. It does appear that the plaintiff had an unusual home remedy for stopping a tickling in his throat. He appears to have massaged away the tickle with a small amount of rubbing alcohol mixed in water. While this internal use of external alcohol to suppress rather than sponsor a tickle in the throat may seem to some to have an Alice in Wonderland air about it, the Court is persuaded by the testimony of the plaintiff and his doctor, as well as by the laws of toxicology, that his use of his "home remedy" was so limited in quantity and so remote in time from his arrest that, while it may have left its effect upon his health and his hearing, it was not sufficient to cause a state of intoxication at the time of his arrest remotely approaching the offense of public drunkenness. Moreover, at the time of the plaintiff's arrest, the defendant had had neither time nor opportunity to make observations with reference to the plaintiff's intoxication or lack thereof sufficient to formulate an opinion based upon probable cause as to his commission of the offense of public drunkenness. It was the lingering odor of the plaintiff's words, sensed by the ear, rather than the smell of the plaintiff's breath, sensed by the nose, that could have led the defendant to arrest the plaintiff for public drunkenness at the time the arrest was actually made. Likewise, aside from the fact that such profanity as did occur upon the part of the plaintiff appears to have occurred beyond the city limits of Cleveland and beyond the reach of the city ordinance upon which the disorderly conduct arrest purports to have been made, the Court is of the opinion that a single epithet hurled in passing upon the highway by a motorist who believed himself offended by the operation of another automobile would not constitute probable cause for making an arrest for disorderly conduct. It appears to the Court that the upshot of the matter is that the defendant sought to use the power of arrest to win a motorists' quarrel in which the defendant was not altogether blameless either in causing nor in pursuing and prolonging. The right of lawful arrest is too powerful a weapon and the right to freedom from unlawful arrest is too weighty a shield to use the one or to sacrifice the other in settlement of the exchange of a few angry words between motorists, which words, while they should never have been spoken, should equally have passed without pursuit.

(2) While the plaintiff's conduct in initiating the set of circumstances which ultimately led to his arrest can hardly be called exemplary, it does appear that he was arrested under circumstances not warranting his arrest, imprisoned for a brief time under circumstances not warranting his imprisonment, and prosecuted under circumstances not warranting his prosecution.

(3) The fortunate part of this unfortunate affair is that the plaintiff's damages and injuries appear to have been limited. Although there is testimony of an abrasion of a minor nature to his head in getting out of the car at the time of the arrest and of some soreness in his arms occasioned by the defendant's firm grip at the time of the arrest, the plaintiff suffered no other trauma. The plaintiff's principal complaint was of the injury to his reputation and emotional injury occasioned by his arrest. Other than the plaintiff's understandable concern over his reputation, however, there is no evidence that the arrest and prose-

cution of the plaintiff was known outside of his family and doctor or that he did in fact suffer any injury to his reputation. Certainly he suffered none in the eyes of his family or of his doctor. With respect to the emotional injury suffered by the plaintiff, he appears to have gone to the doctor on four occasions complaining of nervousness in the year and a half since his arrest and tranquilizers were prescribed upon each occasion. For this he has incurred a $21.00 doctor bill and, according to his testimony, has spent approximately $75.00 for tranquilizers.

## CONCLUSIONS OF LAW

■ (1) As the legality of an arrest and the legality of an imprisonment may present constitutional issues, it appears that this Court would have jurisdiction of this cause of action under the civil rights statute here relied upon irrespective of the amount in controversy. 42 U.S.C. § 1983; Douglas v. City of Jeannette, (1943) 319 U.S. 157, 63 S.Ct. 87, 87 L.Ed. 1324, rehearing denied 319 U. S. 782, 63 S.Ct. 1170, 87 L.Ed. 1726; Hague v. C.I.O., (1939) 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423.

■■ (2) The arrest and the temporary imprisonment of the plaintiff under the circumstances of this case constituted a violation of the plaintiff's constitutional rights to be free from unlawful arrest and to be free from unlawful imprisonment, and accordingly violated the plaintiff's rights under 42 U.S.C. § 1983. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492. As a result of the violation of the plaintiff's rights, the plaintiff sustained damages and injuries in the sum of $650.00.

■ (3) The arrest, imprisonment, and prosecution of the plaintiff constituted a false arrest, false imprisonment, and malicious prosecution of the plaintiff respectively, but the damages for such injuries as were occasioned by such torts are included with the damages awarded for violation of the plaintiff's rights under 42 U.S.C. § 1983.

A judgment will enter for the plaintiff accordingly.