Tommy **MOORE** and Johnny Stair,
Plaintiffs-Appellants,

v.

John **BISHOP**, Sr., Investigator, Sullivan
County Sheriff's Dept., Defendant.

Civ. A. No. 2597.

United States District Court,
E. D. Tennessee,
Northeastern Division.

March 8, 1972.

Alfred W. Taylor, Johnson City, Tenn., for plaintiffs.

Carl W. Miller and Shelburne Ferguson, Jr., Kingsport, Tenn., for defendant.

## MEMORANDUM OPINION

NEESE, District Judge.

This is an action seeking money damages for alleged violation of the respective plaintiffs' federally-protected civil rights. 42 U.S.C. §§ 1983, 1985. This Court has jurisdiction. See memorandum opinion and order herein of December 14, 1970. The evidence was heard by the Court without a jury on May 25–26, 1971.

Each of the plaintiffs is a citizen of the United States, although presently confined to a Tennessee prison. They and others had escaped from the Sullivan County, Tennessee jail on the evening of July 7, 1970. A massive manhunt was engaged. The defendant Mr. Bishop was a duly appointed and acting deputy sheriff of that county and acting at all pertinent times under color of the laws of the state of Tennessee.

Mr. Bill Wright, sheriff of that county, obtained information that the plaintiffs and perhaps another escapee or other escapees were concealed in one of three dwelling places in the Long Island section of Kingsport, Tennessee. He divided his posse into groups. Mr. Bishop and other officers were dispatched to 607 Young Road, premises owned by Mr. Moore's mother and occupied by Mrs. Georgia Hawkins. Mr. Bishop was armed with warrants for the arrest of Messrs. Moore and Stair for escaping jail while serving sentences on a felony charge. It is stipulated that these warrants charged each of the plaintiffs with a felony.

On the evening of July 9, 1970, Mr. Bishop went to the door of the Hawkins residence, announced his identity and purpose and, receiving no response from inside, entered the dwelling with several other officers.

According to Mr. Moore, he hid in a storage room of the house behind a metal sink and under a blanket, and Mr. Stair positioned himself beside the entrance to that room; that Mr. Stair was taken into custody by Mr. Bishop, placed facedown on the floor, and handcuffed; that he (Mr. Moore) then heard a pistol shot; that he was frightened; that Mr. Bishop called his name and told him to come out; that he then heard another shot, and Mr. Bishop told him to come out with his hands up; that he was receiving different instructions from different officers, but came out with his hands hoisted, and said "here I am;

what do you want me to do?"; that, thereupon, Mr. Bishop fired a charge from a shotgun within a foot of his head; that Mr. Bishop then instructed him to lie on the floor facedown with his hands behind his back; that afterward he was handcuffed, and after the handcuffs were applied, Mr. Bishop hit him behind the left ear with the barrel of the shotgun, opening a wound some one to 1½ inches in length; that Mr. Bishop then cocked the shotgun, placed it at the back of his head, and stated: "It's a good thing I like you."; that he was transported to jail, where he was given a copy of the warrant charging him with escaping jail; that after about one-half hour he was transported to a hospital, where three or four stitches were taken to close the wound in his head, and he was returned to jail; and, that since the injury his vision has been poorer, and he experiences blackouts and vertigo.

Mr. Stair testified that, when the officers entered the Hawkins dwelling, he stood beside the doorway leading into the storage room of the dwelling; that Mr. Bishop came in and put a gun into his face and said: "If you make a move, I'll kill you"; that he then asked concerning the whereabouts of Mr. Moore; and that, after both plaintiffs had been placed on the floor of the room facedown and had their hands handcuffed behind them, Mr. Bishop kicked him (Mr. Stair) in the side of the head and "busted" Mr. Moore in the back of his head with a gun. Mr. Stair did not seek medical attention, and none was given. He testified that, after this incident, Mr. Bishop told him that, if he and Mr. Moore would say they had broken into a house, he (Mr. Bishop) would not prosecute Mr. Moore as an habitual criminal.

As might be expected, Mr. Bishop's version is markedly different. He said that a bloodhound indicated that the escapees were in the Hawkins dwelling; that he "banged" on its door about four times, identified himself as an officer and stated his purpose to arrest the plaintiffs; that, after waiting "about five minutes", he pushed the front door open, and searched the inside of the house; that he pulled a curtain back from an inner doorway, whereupon Mr. Stair grabbed his revolver; that in the melee the pistol was discharged; that he pushed Mr. Stair back with a flashlight and directed him to lie on the floor; that he then obtained a shotgun from another officer and called to Mr. Moore three times to surrender himself, stating that he had a warrant for his arrest and was "tired of fooling with him"; that when Mr. Moore emerged from his place of hiding, his hand was closed and that he (Mr. Bishop) thought Mr. Moore had a gun; that Mr. Bishop shot the gun to the right of Mr. Moore's head; that Mr. Moore lunged at Mr. Bishop, and that Mr. Bishop then struck him on his arm with a so-called "butt-stroke", and that the butt of the gun might have also struck Mr. Moore's head behind the ear; and, that in the subsequent search of Mr. Moore, while he was on the floor, the officers found a knife in Mr. Moore's rear pocket.

The remainder of the evidence is equally contradictory. There was understandably a great deal of confusion within the Hawkins dwelling during this activity, and a large crowd had gathered outside. Some witnesses say that Mr. Bishop struck Mr. Moore behind the left ear on the outside of the Hawkins residence. Another witness within the building claimed that Mr. Moore came out of the storeroom into another room with a knife raised over his head; that Mr. Bishop told him to "drop it"; that Mr. Moore then put the knife back into his pocket, but pulled the knife again; that at this point Mr. Bishop fired a shot; whereupon Mr. Moore lunged at Mr. Bishop, and Mr. Bishop hit him with the butt of the gun. There was evidence from Mrs. Hawkins that the knife in evidence was taken from her kitchen by Mr. Stair; while other witnesses testified that this same knife was stolen from their home a day earlier.

Mr. Bishop was authorized by Tennessee law to arrest the plaintiffs under the

warrants he had for execution in his possession at the time of this incident. T.C.A. § 40–801. He was authorized to break open any door to execute the warrant, and to retake the escaped prisoners after giving notice of his authority and purpose, unless he was admitted to the residence. T.C.A. §§ 40–807, 40–823. As has been stated,

> When an officer has a right to make an arrest, he may use whatever force is reasonably necessary to apprehend the offender or effect the arrest, and no more; he must avoid using unnecessary violence. His privilege to use force is not limited to that amount of force necessary to protect himself, but extends to that amount reasonably necessary to perform his duty. * * * He cannot * * * use force or violence disproportionate to the extent of the resistance offered.
>
> * * * * * *
>
> An officer in making a lawful arrest is entitled to use whatever force may be necessary in self-defense. He is not subject to the rule that the right of self-defense may not be invoked by the aggressor, and to overcome all resistance. Nor is he required to retreat before shooting * * * in his own defense, where appearances justify his fear of suffering serious injury or loss of life. * * *

5 Am.Jur. (2d) 766–767, Arrest § 80, citing, *inter alia*, McArthur v. Pennington, D.C.Tenn. (1963), 253 F.Supp. 420, 423 [3]. Further:

> What amounts to reasonable force on the part of an officer making an arrest usually depends on the facts in the particular case, and hence the question is for the [trier of the facts.] The reasonableness of the force used must be judged in the light of the circumstances as they appeared to the officer at the time he acted, and the measure is generally considered to be that which an ordinarily prudent and intelligent person, with the knowledge and in the situation of the arresting officer, would have deemed necessary under the circumstances. The officer has discretion, within reasonable limits to determine the amount of force which the circumstances require, and he is not guilty of wrong unless he arbitrarily abuses the power confided in him. Moreover, it is presumed that he acted in good faith.
>
> * * *

5 Am.Jur. (2d) 768, Arrest, § 81.

This is a difficult decision. There is no question but that Mr. Bishop struck Mr. Moore behind the left ear, a dangerous place to hit any person. There is question as to whether Mr. Bishop kicked Mr. Stair, and the Court emphasizes that there is doubt as to whether this happened.

It appeared to the Court that the witnesses for the plaintiffs seemed to be overly-eager to say anything which might appear to be helpful to the plaintiffs' cause; likewise, the defense witnesses, for the most part, were able to see and recite on the witness stand events which others in position to have seen and heard the same things did not see and hear. As suggested earlier, there was confusion both within and without the Hawkins residence while these arrests were being made. The court recognizes that things may have been seen and heard differently by the various witnesses, and that there may have been instances of failure of correct recollection of the true events.

With so much of the testimony producing doubtful credibility, the Court must return to the original premise, that the plaintiffs had the burden of proving their claims by a preponderance of the evidence. Although the Court would not be greatly surprised if their versions of what occurred were the correct ones, it cannot be said as a matter of law that they have proved their claims by the greater weight of the evidence.

Accordingly, it is the decision of this Court that each of the plaintiffs is denied all relief. Rule 58, Federal Rules of Civil Procedure.