Carl **FORD**, Plaintiff,

v.

Victor **WELLS**, Constable, and Western Surety Company, Defendants.

Civ. A. No. 2736.

United States District Court, E. D. Tennessee, Northeastern Division.

May 18, 1972.

W. E. Bowman, Jr., and Kyle K. King, Greeneville, Tenn., for plaintiff.

Charles R. Terry, Charles R. Terry & Associates, Morristown, Tenn., for defendants.

## MEMORANDUM OPINION

NEESE, District Judge.

This is an action for money damages for the violation by the defendant Mr. Victor Wells of the federally-protected civil rights of the plaintiff Mr. Carl Ford in a warrantless arrest. 42 U.S.C. § 1983. It was tried by the Court on May 22, 1972.

■ At all pertinent times: the defendant Mr. Wells was a duly elected constable of Greene County, Tennessee and acting under color of the laws of Tennessee, and his codefendant Western Surety Company was the surety on his official bond. T. C. A. § 8–1006. As such constable of such county, Mr. Wells was conservator of the peace, T. C. A. § 8–1009, therefore, an officer of the law. " * * * An officer may, without a warrant, arrest a person: (1) [f]or a public offense committed * * * in his presence. * * * " T. C. A. § 40–803.

On Easter afternoon, April 11, 1971, Mr. Wells received a telephoned report, transmitted to him by his wife, that persons were publicly drunk in his district at the Mosheim recreation center, Mosheim, Tennessee. He drove his automobile to such place, observed the plaintiff Mr. Ford from about ten feet away inside a building; and concluded that Mr. Ford was " * * * conspicuously drunk * * * in a public place. He had arrested Mr. Ford previously and had been met with resistance; so, he returned to his home some 100 yards away, donned his uniform, obtained his "arrest equipment," and returned to the scene of the purported criminal activity. As he reached the scene, he requested the dispatcher for the sheriff of the county to send assistance. None ever responded.

Mr. Wells testified that, as he emerged from his automobile, Mr. Ford was staggering and asked. "Who'd you come after—me?" and took a knife from his pocket; that Mr. Ford then said he " * * * would cut my G — — damned a — — off"; that he advised Mr. Ford that he was under arrest for public drunkenness and attempted to wrest the knife from him; that he smelled the odor of alcohol on Mr. Ford's breath; that he (Mr. Wells) was swinging his blackjack in the fracas but doesn't know whether he struck Mr. Ford with it; that, during the struggle, Mr. Ford replaced his knife in the left rear pocket of his trousers; that Mr. Ford struck him several times; that he asked a bystander[1] to call other officers to help him; and that he used only that force he deemed absolutely necessary to protect himself and effect the arrest.

■ The gravamen of Mr. Wells' defense herein is that he acted in good faith both in arresting Mr. Ford for com-

---

1. This bystander was Mr. Jack Brown. When Mr. Brown appeared at the preliminary hearing for Mr. Ford afterward, Mr. Brown was arrested for interfering with an officer in the performance of his duty. This charge against Mr. Brown was subsequently dismissed.

.mitting the offense of public drunkenness in the presence of the officer and in subduing the plaintiff to effect the arrest. " * * * There can be no quarrel with the fact that 'good faith' in the circumstances of an arrest is a necessary and historically validated defense. As said by the Supreme Court in Pierson [v. Ray, (1967), 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288], 'A policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does.' 386 U.S. at 555, 87 S.Ct. at 1218, 18 L.Ed.2d at 295.

"The reasons for this broad protection are clear. An arrest is often a stressful and unstable situation calling for discretion, speed, and on-the-spot evaluation. * * * As a result, constabulary latitudinarianism is important, and peace officers are and must be endowed with privileges not accorded to ordinary citizens. In the words of the editors of the Restatement of Torts, Second:

'The additional privilege is given because the peace officer has a duty to the public to prevent crime and arrest criminals; the performance of these duties would be seriously impaired unless peace officers were given considerable discretion in their performance and protected from liability for the consequences of honest and reasonable mistakes.' § 121, Comment (b) and (c) at 206. * * * "

Whirl v. Kern, C.A.5th (1969), 407 F.2d 781, 790–791 [8]. The defense of good faith and probable cause is available to officers in an action under 42 U.S.C. § 1983. Pierson v. Ray, *supra*, 386 U.S. at 556, 87 S.Ct. 1213, 18 L.Ed.2d at 296; Notaras v. Ramon, C.A.9th (1967), 383 F.2d 403, 404; Banish v. Locks, C.A.7th (1969), 414 F.2d 638, 651 [1].

A character witness for Mr. Wells testified that he has a good reputation in the community in which he resides for truth and veracity and is entitled to be believed in a court of justice, even where he is a party litigant. However, despite the firm determination of this Court to afford any peace officer the greatest protection from liability in effecting arrests, and despite the good reputation which the defendant appears to bear for truth and veracity in the community of his residence, in this particular instance this Court is prevented by the facts, peculiar to this case, from finding Mr. Wells acted in the arrest and beating of Mr. Ford in the necessary good faith and with probable cause.

Eight witnesses testified that Mr. Ford was neither drunk nor menacing Mr. Wells with a knife or any other weapon before and during his arrest by Mr. Wells. Only one witness, Mr. Dale Vick, corroborated Mr. Wells' version, and this merely to the extent of testifying that he smelled the odor of alcohol on Mr. Ford's breath while the melee was in progress.[2] Seven of the other witnesses, i. e., Messrs. Charles Bales, Eddie Martin, Jerry Wilkerson, Jack Brown, David Lawson, David Westmoreland, and R. J. ("Herbie") Jones, were eyewitnesses to all or some part of the fracas between Messrs. Ford and Wells. Each testified that he was in close proximity to Mr. Ford and detected no odor of alcohol on his breath. The eighth such witness, Mr. Max Bales, testified that he was in close proximity to Mr. Ford at the Greene County, Tennessee jail a brief while after the arrest, that he detected no such odor about Mr. Ford, and that Mr. Ford was sober. The latter-named Mr. Bales is the son-in-law of Mr. Ford,[3] and Mr. Wells and Mr. Brown do not hold one another in the highest esteem. No reason was advanced, however,

---

2. Mr. Vick testified he saw no blood on Mr. Ford's head or clothing, although the other witnesses were unanimous in their testimony that Mr. Ford's head was bleeding, there was blood on his shirt, and his sweater was torn.

3. A ninth witness, Mrs. Jane Ford, a daughter-in-law of Mr. Ford, testified that he came home from jail sober and without the odor of alcohol about him. This witness was offered by the defendant but surprised the defense with such testimony.

to cause the credibility of the remaining six witnesses to come into question. In addition, all of the seven witnesses to the arrest testified that Mr. Ford was not menacing Mr. Wells with a knife or other weapon as the arrest was effected. "Good faith" is not without its limitations.

As has been said:

\* \* \* \* \* \*

\* \* \* When the constitutional validity of an arrest is challenged, it is the function of a court to determine whether the facts available to the officers at the moment of the arrest would "warrant a man of reasonable caution in the belief" that an offense has been committed. \* \* \* We do not hold that the officer's knowledge of the [plaintiff's] physical appearance and previous record was \* \* \* entirely irrelevant upon the issue of probable cause. \* \* \* But to hold that knowledge of either or both of these facts constituted probable cause would be to hold that anyone with a previous criminal record could be arrested at will.

\* \* \* "[G]ood faith on the part of the arresting [officer] is not enough." \* \* \* If subjective good faith alone were the test, the protections of the Fourth Amendment [to the federal Constitution] would evaporate, and the people would be "secure in their persons \* \* \*," only in the discretion of the police. \* \* \*

\* \* \* \* \* \*

Beck v. Ohio (1964), 379 U.S. 89, 96–97, 85 S.Ct. 223, 228, 13 L.Ed.2d 142, 147–148 [8], [10, 11].

As applied to the situation *sub judice,* Mr. Wells was aware that Mr. Ford had been arrested many times previously for being publicly drunk. He had had previous experience with such a charge and had been met with resistance in effecting the arrest. Mr. Ford's appearance suggested to Mr. Wells that Mr. Ford was " \* \* \* conspicuously drunk \* \* \*." Yet, to eight eye-witnesses, Mr. Ford did not appear either to be in a drunken condition or even imbibing intoxicants. Under these circumstances, this Court cannot discredit entirely the equated observations of eight other witnesses and conclude that the *facts* available to Mr. Wells at the moment of the arrest would have warranted a man of reasonable caution in the belief that Mr. Ford was committing the offense of public drunkenness in Mr. Wells' presence. This Court therefore finds that Mr. Wells' arrest of Mr. Ford for this offense was without probable cause.

The only justification for Mr. Wells' knocking Mr. Ford down three times with a blackjack and dragging him with a "dog-choker" chain was to effect the arrest. " \* \* \* If, after notice of the intention [of the officer] to arrest the defendant, he \* \* \* forcibly resist, the officer may use all the necessary means to effect the arrest. \* \* \* " T. C. A. § 40–808.[4]

Mr. Wells appeared to believe that the means necessary to arrest Mr. Ford was to bludgeon him with a blackjack and partially drag him with a chain. He assigns as his reason for this, that Mr. Ford was approaching him while opening

4. This Court has described in some detail the use by Tennessee law enforcement officers of the necessary means to effect an arrest, viz.:

' " \* \* \* 'When an officer has a right to make an arrest, he may use whatever force is reasonably necessary to apprehend the offender or effect the arrest, and no more; he must avoid using unnecessary violence. His privilege to use force is not limited to that amount of force necessary to protect himself, but extends to that amount reasonably necessary to perform his duty. \* \* \* He cannot \* \* \* use force or violence disproportionate to the extent of the resistance offered.

\* \* \* \* \*

" 'An officer in making a lawful arrest is entitled to use whatever force may be necessary in self-defense. He is not subject to the rule that the right of self-defense may not be invoked by the aggressor, and to overcome all resistance. Nor is he required to retreat before shooting \* \* \* in his own defense, where appearances justify his fear of suffering serious injury or loss of life. \* \* \* ' ".

a knife. Mr. Wells claims that no other persons, other than Mr. Ford and himself, were present when this occurred; yet, Messrs. Lawson, Charles Bales, Westmoreland and Jones testified that each of them was present at such time, and each of them testified that Mr. Ford was not armed with a knife or any other weapon. No witness was presented to corroborate this version of Mr. Wells. Thus, the decided preponderance of the evidence is contrary to Mr. Wells' contentions in this regard.

■ The claim of Mr. Ford [5] that he sustained injuries to his head, face, hands, back, wrist and knee in the struggle with Mr. Wells is undisputed. There is no support for his claim of permanency of his injuries, however. He had been treated by a physician for an injury to his back sustained in an encounter on January 3, 1971 with Mr. Wells. He claims headaches and a partial loss of hearing rendering him unable to work, as a result of the later confrontation with Mr. Wells.

As indicated hereinbefore, after the fracas Mr. Wells delivered Mr. Ford to the Greene County, Tennessee jail, where Mr. Ford was required to remain incarcerated for the customary period of four hours. At a preliminary hearing of April 19, 1971, the charges against Mr. Ford were dismissed by the Court of General Sessions of Greene County, Tennessee.

■ The arrest, physical abuse and temporary imprisonment of Mr. Ford by Mr. Wells constituted, under the peculiar facts of this particular action, a violation of the plaintiff's constitutional rights to be free from unlawful arrest, summary punishment, and unlawful imprisonment, and accordingly violated the plaintiff's rights under 42 U.S.C. § 1983. Cf.: Monroe v. Pape (1961), 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492; Rue v. Snyder, D.C.Tenn. (1966), 249 F.Supp. 740 (esp. at 743 [4, 5]).

It is difficult to assess a proper amount of damages for such violation. Mr. Ford appears to have been arrested for public drunkenness and related crimes some 21 times before this episode; he was not as damaged by being unlawfully arrested and imprisoned as another person with an unblemished record might have been. Yet, he was the

---

Moore v. Bishop, D.C.Tenn. (1972), 338 F.Supp. 513, 515. Further:

" * * * What amounts to reasonable force on the part of an officer making an arrest usually depends on the facts in the particular case, and hence the question is for the [trier of the facts.] The reasonableness of the force used must be judged in the light of the circumstances to the officer at the time he acted, and the measure is generally considered to be that which an ordinarily prudent and intelligent person, with the knowledge and in the situation of the arresting officer, would have deemed necessary under the circumstances. The officer has discretion, within reasonable limits to determine the amount of force which the circumstances require, and he is not guilty of wrong unless he arbitrarily abuses the power confided in him. Moreover, it is presumed that he acted in good faith. * * * ' " *Idem.*

5. Mr. Ford's version of events is that Mr. Wells approached him, stating, "You're under arrest" ; that Mr. Ford inquired, "What for?"; to which Mr. Wells responded, "D—— you, I'll show you what for"; and, that Mr. Wells then struck him on the back of his head with a blackjack and began beating him, advising him during the beating that he was being arrested for public drunkenness. Mr. Ford asserts that he offered no resistance at any time, except to shield his eyes with his arms from the blows. He is corroborated by the four eye-witnesses in much of this version, except that one or more thereof stated Mr. Ford resisted when the beating began. As Mr. Wells had no right to arrest Mr. Ford, Mr. Ford was permitted to resist the illegal attempt to arrest him, although he was not permitted to use more force than was absolutely necessary to repel Mr. Wells' assault. John Bad Elk v. United States (1900), 177 U.S. 529, 535, 20 S.Ct. 729, 44 L.Ed. 874 (headnote 3).

Mr. Ford claims that after Mr. Wells finished beating him, the constable asked him the location of his knife and removed it from the rear pocket of his trousers. Mr. Ford claims further that, while he was down with Mr. Wells astride him, Mr. Wells said: "If you don't hit me, I'll shoot you ! "

target of a blackjack applied to his head and other parts of his body, when Mr. Wells in this instance abused arbitrarily the power confided in him.

■ Nominal damages were proved by Mr. Ford by proof of the deprivation of his above-enumerated rights. Basista v. Weir, C.A.3rd (1965), 340 F.2d 74, 87 [25]. Because Mr. Wells is an officer and not an ordinary citizen, *supra*, this Court is of the opinion that punitive damages should not be assessed. Upon a consideration of the entire record, it is the decision of this Court that the plaintiff Mr. Carl Ford recover of the defendant Mr. Victor Wells and the surety on his official bond, Western Surety Company, the sum of one-thousand, five-hundred dollars ($1,500). Rule 58 (1), Federal Rules of Civil Procedure.

To avoid any misunderstanding, this decision is confined strictly to the facts of this particular case. This Court will continue to accord officers of the law the necessary protection from liability for the consequences of their honest mistakes as they seek to prevent crime and arrest criminals, and will accord them much discretion in the performance of their official duties.