**Fletcher Altman SMITH, and Marguerite Elizabeth Smith, Plaintiffs-Appellees,**

v.

**Don HEATH, Defendant,**

and

**Jack Rohtert, Defendant-Appellant.**

No. 80–5415.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 28, 1982.

Decided Sept. 29, 1982.

Rehearing and Rehearing En Banc Denied Feb. 23, 1983.

Peter H. Curry, William Howard (argued), Nashville, Tenn., for defendant-appellant.

George C. Paine, II, Keith M. Lundin (argued), Daniel C. Kaufman, Waddey & Newport, Nashville, Tenn., for plaintiffs-appellees.

Before MARTIN, Circuit Judge, WEICK, Senior Circuit Judge, and HILLMAN,* District Judge.

HILLMAN, District Judge.

Jack Rohtert, a homicide detective with the Nashville and Davidson County [Tennessee] Metropolitan Police, appeals a judgment against him in the amount of $39,-524.95 for willfully violating the constitutional rights of Fletcher Altman Smith [Smith] and Marguerite Elizabeth Smith [M. E. Smith]. (Although sharing the same last name, Smith and M. E. Smith are not related.)

On May 24, 1975, Smith committed a minor traffic offense in front of his motel in Nashville. Officer Don Heath, a co-defendant, followed Smith into the motel driveway where Smith parked his van and went into his motel apartment, closing the door behind him. This door to his apartment had a large sign on it marked "Private Keep Out." Nevertheless, Heath pursued Smith and kicked that door open to force his way inside. M. E. Smith was sitting at the kitchen table knitting. Her granddaughter was asleep in the bedroom. Heath entered the kitchen with his gun drawn, and without explanation, walked through the kitchen to the bedroom which Smith had entered. Heath opened the bedroom door and fired repeatedly at Smith.

---

* Honorable Douglas W. Hillman, District Judge, United States District Court for the Western District of Michigan, sitting by designation.

Predictably, Smith was gravely wounded by Heath's attack. M. E. Smith called an ambulance. Other police officers soon arrived.

Meanwhile, Officer Rohtert drove to the motel after receiving a call on his car radio about the shooting incident and possible homicide. When he arrived, he found the door open with the other officers inside. By his own admission, he was the officer in charge of the investigation. He ordered M. E. Smith into a back room, telling her to stay there but neither inquiring as to her knowledge of the events or explaining their presence and actions. Then, he directed the other officers to seize evidence, not limiting their search in any way. With no apparent justification, Smith's van was impounded and taken away. In the words of the district judge, "in an effort to find some evidence to mitigate the impact of those unconstitutional acts [Heath's entry and shooting], the defendant Rohtert and his subordinates engaged in an unconstitutional orgy of unique proportions. They were not performing routine nor normal police procedures." Although the police ransacked the apartment, no evidence of illegal acts or activity was uncovered.

No claim is made that Rohtert obtained permission to either enter or search the Smith apartment. Likewise he did not obtain a warrant.

After Smith had been transported to a hospital, Rohtert ordered an officer to take M. E. Smith to police headquarters to obtain a statement, while the other officers remained behind and continued their search. She was kept at the station for over five hours. While at the station, she asked to leave, but was refused permission. No one told her that she was free to go if she wanted. She was given no *Miranda* warnings. Some friends came to speak with her, but she was not allowed to see them. A statement was taken from her, but no copy was given to her. She was not allowed to go to the bathroom unaccompanied. She was released between 6:00 a.m. and 7:00 a.m.

Since that time, she has been nervous and unable to sleep. At the time of the trial, she was still under the care of a medical doctor and taking tranquilizers for her nervous condition.

Smith survived the attack. He and M. E. Smith brought this action against Heath and Rohtert under 42 U.S.C. section 1983, alleging that these police officers had willfully violated their Fourth Amendment rights by conducting an illegal search and seizure of Smith's apartment, and by making an illegal arrest and detention of M. E. Smith. Following a bench trial, the district judge found both defendants individually liable on the 1983 claims. However, only Rohtert appeals that decision.

Rohtert was ordered to compensate Smith as follows: compensatory damages of $5,000 for the unconstitutional search and seizure, $450 for three "lost" guns and punitive damages of $5,000, totalling $10,450. In addition, Rohtert was ordered to pay M. E. Smith: compensatory damages of $5,000 for her unconstitutional arrest and detention, $5,000 for her ensuing nervous condition and punitive damages of $2,500, totalling $12,500. The district judge also assessed Rohtert's portion of the attorney fees and costs at $16,574.95. In all, Rohtert was ordered to pay $39,524.95.

On appeal Rohtert alleges error in the findings of fact, the conclusions of law, and the awards of compensatory damages, punitive damages and attorney fees and costs.

## I. LIABILITY

The first issue of this appeal is whether Rohtert violated the civil rights of Smith by searching his apartment and by his conduct towards M. E. Smith. The court will first address the issue of Rohtert's liability to M. E. Smith (referred to in the record and by the district judge as "Grandma").

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, ..." The requirement that searches and seizures be based on some objective justification, governs all seizures

of the person, "including seizures that involve only a brief detention short of traditional arrest. *Davis v. Mississippi*, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969); *Terry v. Ohio*, 392 U.S. 1, 16–19, 88 S.Ct. 1868, 1877–78, 20 L.Ed.2d 889 (1968)." *United States v. Brignoni-Ponce*, 422 U.S. 873, 878, 95 S.Ct. 2574, 2578, 45 L.Ed.2d 607 (1975). Of course, not all contacts between police officers and citizens amount to seizures. The Supreme Court in *United States v. Mendenhall*, 446 U.S. 544, 553–554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980) stated:

> "... a person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained....
>
> *         *         *         *         *         *
>
> We conclude that a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.[6]

---

[6] We agree with the District Court that the subjective intention of the DEA agent in this case to detain the respondent, had she attempted to leave, is irrelevant except insofar as that may have been conveyed to the respondent."

■ The test, therefore, in determining whether a seizure has or has not occurred is under all the circumstances what a reasonable citizen, innocent of crime, would have thought. *United States v. Beck*, 598 F.2d 497 (9th Cir. 1979).

In a situation such as this, some relevant factors to consider are: (1) whether the officers gave the individual the option of accompanying them to the station; (2) whether the individual was specifically told he/she was *not* under arrest; and (3) whether the individual consented to go to the police station. *See, e.g., Bridges v. United States*, 392 A.2d 1053 (D.C.App. 1978), *cert. denied*, 440 U.S. 938, 99 S.Ct. 1286, 59 L.Ed.2d 498 (1979).

In bench trials, the scope of appellate review is limited to determining whether the findings made by the trial court are clearly erroneous. Fed.R.Ċiv.P. 52. The function of this court is not to decide the case de novo. We cannot substitute our judgment for that of the district judge merely because we might give the facts another construction, resolve the ambiguities differently or generally view the facts differently. *See, e.g., Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969); *United States v. National Ass'n of Real Estate Bds.*, 339 U.S. 485, 70 S.Ct. 711, 94 L.Ed. 1007 (1950); *Shimman v. Frank*, 625 F.2d 80 (6th Cir. 1980), *rehearing denied* 633 F.2d 468 (6th Cir. 1980). The major rationale of this rule of law is that the trier of fact has the opportunity to view the witnesses, to observe their demeanor and to hear what was said in light of how it was said and in light of the totality of the proceedings. *Lydle v. United States*, 635 F.2d 763, 765, n. 1 (6th Cir. 1981).

■ Here, the district judge found from the evidence:

> "He [Rohtert] caused the plaintiff Marguerite Betty Smith, Grandma, to be taken into custody.... Grandma was taken to the police station where she was detained for several hours to give a statement covering the events of the night."

M. E. Smith was never told she was not under arrest. To the contrary, she was led to believe that she was. She was not allowed to see friends. She was not allowed to leave or to go to the bathroom unattended. Reasonable people in a similar situation could well conclude that they were not free to leave. The finding by the district judge that M. E. Smith had been unlawfully arrested and detained is amply supported by the record.

■ Turning to the issue of Rohtert's liability to Smith for the entry into and search of his apartment and the seizure of evidence, the facts of this case also support the conclusion that these acts were unconstitutional.

The Fourth Amendment requires a warrant for the police to search an apartment. However, searches may be conducted under special circumstances without a warrant.

Examples of such circumstances include when police are responding to an emergency; when they are in hot pursuit of a fleeing felon; when evidence is in the process of being destroyed; when evidence is about to be removed from the jurisdiction; when it is impracticable for the police to obtain a warrant; or, if incident to an arrest, when the search is confined to the immediate vicinity of the arrest. *Vale v. Louisiana,* 399 U.S. 30, 33–35, 90 S.Ct. 1969, 1971–72, 26 L.Ed.2d 409 (1970).

The United States Supreme Court recently dealt with very similar facts in *Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). In *Mincey,* within ten minutes of a murder committed during a narcotics raid, homicide detectives arrived at the murder scene and began their investigation. No warrant was ever obtained. In their effort to gather evidence, they searched the entire apartment, opened drawers, pulled up sections of carpet and examined every item in the apartment during a four-day period. In concluding that a murder scene exception to the Fourth Amendment is inconsistent with the Fourth and Fourteenth Amendment, the Court, at 392–394, 98 S.Ct. at 2413–2414, stated:

"... [W]hen the police come upon the scene of a homicide they may make a prompt warrantless search of the area to see if there are other victims or if a killer is still on the premises.... And the police may seize any evidence that is in plain view during the course of their legitimate emergency activities....

But a warrantless search must be 'strictly circumscribed by the exigencies which justify its initiation,' *Terry v. Ohio,* 392 U.S., at 25–26 [88 S.Ct. at 1882], and it simply cannot be contended that this search was justified by any emergency threatening life or limb. All the persons in Mincey's apartment had been located before the investigating homicide officers arrived there and began their search....

\*      \*      \*      \*      \*      \*

Except for the fact that the offense under investigation was a homicide, there were no exigent circumstances in this case ..."

This language compels a finding of liability in this appeal. All the persons in Smith's apartment had been located before Rohtert arrived. The only victim of the attack was being taken for emergency hospital care. The attacker was known and presumably presented no further danger. As in *Mincey,* there was no indication that any special circumstance existed which would have allowed the warrantless entry into and the search and seizure of Smith's apartment.

In *Michigan v. Tyler,* 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978), the United States Supreme Court held that a burning building presented an exigent circumstance. The firemen's reentry into the burnt building a few hours later was allowable as a continuation of the first entry when necessitated by darkness, steam and smoke. But subsequent reentries were invalid, since these were conducted with neither valid warrants nor consent and were detached from the initial exigency and warrantless entry.

*Tyler* also supports the trial court's finding of liability in this action. Since there was no initial exigency to allow the search, the police were required to obtain a warrant or consent. They obtained neither, thus rendering the search and seizure invalid.

Although Rohtert did not personally commit all the acts depriving appellees of their rights, he is nonetheless liable for the deprivation he caused. Rohtert personally participated in the search and, by his own admission, he was in charge of the investigation. In that capacity, he ordered the detention of M. E. Smith and did not limit the scope of the search of Smith's apartment. When one officer with authority directs his subordinates to interfere with the civil rights of another, that officer is an active participant in the interference and thus can be held liable for the subordinates' actions. This view is mandated by the language of the statute. 42 U.S.C. § 1983 reads in pertinent part:

"Every person who ... subjects, or causes to be subjected, any citizen ... to the

deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the person injured . . ."

We agree with the dissent at page 232: "Police supervisory officers cannot be held liable for failure to prevent misconduct by subordinate[s] absent a showing of direct responsibility for the improper action."

Here, however, the district judge specifically found that Rohtert was directly responsible for and personally participated in the deprivation of the Smiths' constitutional rights. He both subjected and caused the appellees to be subjected to the deprivation of their civil rights and is thus liable under section 1983. *See, Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *Coffy v. Multi-County Narcotics Bureau,* 600 F.2d 570 (6th Cir. 1979); *Henzel v. Gerstein,* 608 F.2d 654 (5th Cir. 1979); *Maclin v. Paulson,* 627 F.2d 83 (7th Cir. 1980); *May v. Enomoto,* 633 F.2d 164 (9th Cir. 1980); *Black v. Stephens,* 662 F.2d 181 (3rd Cir. 1981). Cases involving claims against non-participating supervisory officials for failure in their supervisory and training functions are not applicable. *Wilson v. Beebe,* 612 F.2d 275 (6th Cir. 1980).

Even nonsupervisory officers who are present at the scene of a violation of another's civil rights and who fail to stop the violation can be liable under section 1983. *Bruner v. Dunaway,* 684 F.2d 422 (6th Cir. 1982); *Smith v. Ross,* 482 F.2d 33 (6th Cir. 1973); *Putnam v. Gerloff,* 639 F.2d 415 (8th Cir. 1981); *Byrd v. Brishke,* 466 F.2d 6 (7th Cir. 1972). Rohtert was present while the other officers unlawfully searched the apartment and thereby violated the Smiths' rights.

The dissent terms it "almost unbelievable" that Rohtert should be found liable for an unlawful entry and search and seizure, when he did not order the presence of the other officers at the apartment. The district court found that Rohtert entered the apartment unlawfully. This view of the evidence is not clearly erroneous and is amply supported by the evidence. We agree

with this finding. It makes no difference that other officers arrived before Rohtert and entered unlawfully. Rohtert is liable for his unlawful entry, which was not made lawful by the prior unlawful entry of the others.

Furthermore, although Rohtert might not have ordered the presence of the others, the evidence amply supports the finding of the district judge that Rohtert directed the other officers after he arrived. He admitted at the trial under oath that upon his arrival he was the officer in charge of the investigation. *See,* Supp. App., p. 34:

"Q And on the night in question, May 24th, 1975, is it not correct that you were a homicide officer, in the Detective Division, and you were in charge of the investigation at the Zip Smith Hotel?

A Yes, sir."

The evidence further shows that Rohtert instructed and directed the identification officers, who did what Rohtert ordered. *See,* Supp. App., p. 35:

"Q Did you instruct them [the identification officers]? Officer Rohtert, did you instruct and direct officers of the ID Division to what you have called . . . scene preservation?

A Yes, Sir."

*See also,* Supp. App., pp. 36, 48, 70 and 71. Moreover, he admitted to personally searching the apartment. *See,* Supp. App., 6, 67. Rohtert entered unlawfully without a warrant, he personally searched the apartment, he directed others to unlawfully search and seize evidence, and he illegally arrested M. E. Smith. For these actions, Rohtert is liable. We do not hold him liable under respondeat superior, which does not apply in section 1983 actions. *Wilson v. Beebe,* 612 F.2d 275 (6th Cir. 1980); *Hays v. Jefferson County, Kentucky,* 668 F.2d 869 (6th Cir. 1982), *rehearing denied* 673 F.2d 152 (6th Cir. 1982). *See also, Sims v. Adams,* 537 F.2d 829 (5th Cir. 1976).

■ With respect to defendant's claim of qualified immunity, the district judge made a specific finding that the officers involved

knew their actions to be improper; that they were not performing routine or normal police procedure; that they had "ulterior" motives in undertaking a warrantless, unconstitutional search and that no probable cause existed for their conduct. The record supports these findings. Such conduct clearly violated constitutional rights of plaintiffs, which a reasonably prudent person would have known, and justifies the conclusion of the district judge that defendants were not entitled to a qualified or "good faith" immunity. *Harlow v. Fitzgerald*, —— U.S. ——, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

## II. DAMAGES

■ The determination of the amount of damages to be awarded is left to the discretion and good judgment of the fact finder as guided by the facts of the particular case. *Tullos v. Corley*, 337 F.2d 884 (6th Cir. 1964). This concept has been specifically applied in section 1983 cases for both punitive and compensatory damages. The court in *Busche v. Burkee*, 649 F.2d 509, 520 (7th Cir.) *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981), said it most concisely:

> "As with compensatory damages, the award of punitive damages is within the discretion of the trial court.
>
> The allowance of such damages inherently involves an evaluation of the nature of the conduct in question, the wisdom of some form of pecuniary punishment, and the advisability of a deterrent. Therefore, the infliction of such damages, and the amount thereof when inflicted, are of necessity within the discretion of the trier of fact.
>
> *Stolberg v. Members of the Board of Trustees for the State Colleges of Connecticut*, 474 F.2d 485, 489 (2d Cir. 1973) (quoting *Lee v. Southern Home Sites Corp.*, 429 F.2d 290, 294 (5th Cir. 1970)."

*See also, Basista v. Weir*, 340 F.2d 74 (3d Cir. 1965); *Zarcone v. Perry*, 572 F.2d 52 (2d Cir. 1978) ("general principles of damages apply to a civil rights action").

In *Smith v. Manausa*, 535 F.2d 353 (6th Cir. 1976), this court held that in bench trials, awards of compensatory and punitive damages are findings of fact which are governed by Fed.R.Civ.P. 52(a). This rule reads in pertinent part: "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witness." [1]

Having set forth the appropriate standard of review, we now apply it to each damage award individually.

### A. Compensatory Damages.

■ The basic purpose of a section 1983 damages award is to compensate persons for injuries caused by the deprivation of their constitutional rights. *Carey v. Piphus*, 435 U.S. 247, 254, 98 S.Ct. 1042, 1047, 55 L.Ed.2d 252 (1978) and the cases cited therein. In guiding lower courts as to which injuries are compensable, the *Carey* court at 264 states that emotional distress caused by a deprivation is compensable under section 1983.

The Seventh Circuit in *Hostrop v. Bd. of Jr. College Dist. No. 515*, 523 F.2d 569, 579–80 (7th Cir. 1975), *cert. denied*, 425 U.S. 963, 96 S.Ct. 1748, 48 L.Ed.2d 208 (1976), held that, although the amount of damages for the deprivation of an intangible constitutional right cannot be determined by reference to an objective standard, such as pecuniary loss, non-punitive damages may be awarded. These damages may be special and the trial court should consider the following factors in making its award: the nature of the constitutional deprivation, the magnitude of the mental distress and humiliation suffered by the plaintiff, and any other injury caused as a result of being deprived of federally protected rights.

---

1. Other courts have stated the test somewhat differently: whether the award is so high as to shock the judicial conscience and constitute a denial of justice. *Zarcone v. Perry*, 572 F.2d 52 (2d Cir. 1978). *See, Stengel v. Belcher*, 522 F.2d 438 (6th Cir. 1975), *cert. dismissed*, 429 U.S. 118, 97 S.Ct. 514, 50 L.Ed.2d 269 (1976).

In *Konczak v. Tyrrell,* 603 F.2d 13 (7th Cir. 1979), *cert. denied,* 444 U.S. 1016, 100 S.Ct. 668, 62 L.Ed.2d 646 (1980), a case factually similar to the one presently before the court, the Seventh Circuit upheld awards of $12,500 in compensatory damages to a husband and wife, although they proved only $576 in lost wages. In that section 1983 action, the husband had been unlawfully arrested, the wife unlawfully detained, and their dwelling unlawfully searched with evidence unlawfully seized. The court rejected the argument that there was no proof of actual damages and pointed to "less quantifiable damages in the form of mental distress, humiliation, loss of reputation, and other general pain and suffering resulting from the arrest, detention, search and seizure, imprisonment, confinement to a mental institution, and prosecution of three criminal complaints." *Id.* at 17.

The importance of taking into account these tangible factors is seen in another section 1983 case, *Baskin v. Parker,* 602 F.2d 1205 (5th Cir. 1979). In *Baskin,* the court reversed the district court's damage award and, on remand, required that the district court award damages for humiliation and emotional distress.

In *Vetters v. Berry,* 575 F.2d 90 (6th Cir. 1978), this court upheld a jury award of $1,040 in compensatory damages and two awards of punitive damages for $25,000 and $10,000 in a section 1983 action. Plaintiff Vetters had been peacefully assembled, then was ordered to go home, assaulted and beaten, unlawfully searched, arrested and held in custody, and later unlawfully charged. In determining whether the awards were excessive, this court quoted Judge Robert Taylor in *Gaston v. Gibson,* 328 F.Supp. 3 (E.D.Tenn.1969). *Gaston* was a Civil Rights Act claim involving injuries inflicted on a 17-year-old college student during the course of an alleged arrest. Plaintiff Gaston's medical bills were $736.60. In sustaining awards of $10,000 compensatory damages and $30,000 punitive damages, Judge Taylor stated:

> "Each defendant's main contention is that the verdict of $10,000.00 compensatory and $30,000.00 punitive damages is excessive and shows prejudice by the jury. There are several civil rights cases where verdicts were less than a total of $10,-000.00. However, in suits where punitive damages are proper, there have been larger verdicts. In *Butts v. Curtis Publishing Company,* 225 F.Supp. 916 (N.D. Ga., 1964), a verdict of $400,000.00 punitive was held proper in a libel and slander case. In *Bucher v. Krause,* 200 F.2d 576, 587 (C.A.7, 1953), $100,000.00 was held proper when a gunshot wound caused serious and permanent damage to plaintiff's buttocks. In *Reynolds v. Pegler,* 223 F.2d 429 (C.A.2, 1955) $1.00 compensatory damages and $175,000.00 punitive damages in a libel and slander case were approved. In addition to obvious common law torts defendants committed, the entire procedure for handling juvenile offenders in Tennessee was disregarded. T.C.A. §§ 37–250, 37–251, 37–252. Even procedural rights given adult offenders were not observed. T.C.A. § 40–806. The conduct of defendants showed disregard for procedural safeguards which our Anglo-American system has established. This court is reluctant to invade the particular province of the jury in evaluating the value of civil rights. *Collum v. Butler,* 288 F.Supp. 918 (N.D.Ill.1968). The shocking conduct shown rebuts any inference of prejudice and passion in the jury's verdict.

No formula exists to determine with precision compensatory damages. The amount is left to the sound discretion of the fact finder. Considering the evidence in the present case in the light most favorable to the plaintiffs, the awards of compensatory damages were well within the proofs.

### B. Punitive Damages.

While compensatory damages, as the name reflects, are to compensate the plaintiff for injuries suffered, "[p]unitive damages have been held to be allowed on the basis of punishment of the wrongdoer, not so much on the nature and extent of the injury as on the 'oppression of the party

who does the injury.' *Johnson v. Husky Industries, Inc.,* 536 F.2d 645, 650 (6th Cir. 1976)." *Vetters* at 96.

The same factors discussed above are relevant in the determination of the punitive damages. Upon review, the facts herein recited support the fact finder's conclusion and considered judgment that Rohtert's actions were in fact willful thus justifying the awards of punitive damages. In all the cases cited herein, and in most others, punitive awards have been much higher than the compensatory awards. Here the punitive award was less. The district judge used considerable restraint in his determination of the punitive amount.

Rohtert maintains that he is entitled to the defense of good faith. The trial court, however, specifically found that he was not so entitled. We agree. The police were not performing routine or normal police procedures. Rohtert's duty was to properly investigate the shooting. But he did far more than just investigate. He ordered others and participated himself in an unconstitutional search and seizure and caused an unconstitutional arrest. These facts are amply supported by the evidence in the record before the court.

■ In conclusion, the awards of both the compensatory and punitive damages are affirmed.

### III. ATTORNEY FEES AND COSTS

■ By the language of 42 U.S.C. § 1988, Congress provided that an award of attorney fees to prevailing parties in actions brought pursuant to section 1983 is within the sound discretion of the district court. However, the court's discretion is narrow. The prevailing party should "ordinarily recover an attorney's fees unless special circumstances would render such an award unjust." *Northcross v. Board of Ed. of Memphis City Schools,* 611 F.2d 624, 633 (6th Cir. 1979), *cert. denied,* 447, U.S. 911, 100 S.Ct. 3000, 64 L.Ed.2d 862 (1980), citing the Senate Report No. 94–1011, reprinted in 1976 U.S.Code Cong. & Admin.News, p. 5908. *See, Dawson v. Pastrick,* 600 F.2d 70, 79 (7th Cir. 1979) ("a prevailing plaintiff should receive fees almost as a matter of course."). *Cf., Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968.)

Smith and M. E. Smith have prevailed in this action and are thus entitled to an award of attorney fees. No special circumstances exist in this case which would make the award of attorney fees unjust.

In *Northcross* at 642, to determine the amount of the award, "[w]e conclude[d] that an analytical approach, grounded in the number of hours expended on the case, will take into account all the relevant factors, and will lead to a reasonable result." Here, the district judge, in a three-page detailed memorandum, set forth how the award was computed. He began by reviewing some of the practical and legal problems faced by the attorneys in preparing this case. He noted such things as the unpopularity of suits against police officers, the difficulty in getting facts and evidence, the necessity for the number of firms involved, and the computation of the time involved. He then used the number of hours and the attorneys' normal billing rates as a basis to compute the award.

As stated in *Northcross* at 638, the court should look at the fair market value of the services rendered in determining the level of compensation. This was done. The trial judge found that the hourly billing rates charged by the attorneys were "slightly less than those customarily charged in the local community for such services." Thus, he concluded the fair market value must be more or equal to these rates. No evidence was offered to the contrary.

The trial judge further deducted five percent to adjust for "some slight overlapping of effort" among the attorneys. This was proper. He also properly allowed reimbursement for the time of clerks, less than a quarter of which was allocated to Rohtert. Rohtert offered no evidence that the number of hours was unreasonable.

In conclusion, we find the findings of fact, the conclusions of law and the awards of compensatory damages, punitive dam-

ages and the attorney fees and costs all proper. For the above reasons, the judgment of the district court is affirmed.

WEICK, Senior Circuit Judge, dissenting:

I respectfully dissent. The District judge titled his opinion following the bench trial as follows:

## MEMORANDUM

"The Shoot Out at the O. K. Motel"

There was indeed a shoot out in the night season around 1:45 A.M. at the motel, but appellant Homicide Detective Jack Rohtert did not participate in the shooting in any manner, and was not even present at the scene. Appellee Fletcher Altman Smith had been pursued by defendant police officer Don Heath for reckless driving and when Smith fled into a room in his motel which contained rifles, shot guns, and ammunition, one of which he had in his hands when Heath chased him into the room and shot him. The room contained on its walls in gun racks, nineteen guns of which twelve were loaded with ammunition.

The rifle in the hands of Smith was not loaded unbeknownst to Heath.

Smith was awarded damages against Heath by the district judge as follows:

| | |
|---|---|
| (a) Pain and suffering | $ 80,000.00 |
| (b) Impairment of enjoyment of life | 5,000.00 |
| (c) Violation of his constitutional right not to be shot | 5,000.00 |
| (d) Hospital bill | 2,212.50 |
| (e) Punitive damages | 25,000.00 |
| Attorney fees | 23,011.20 |
| Total | $140,223.70 |

Police Officer Heath did not file a cross-appeal.[1]

In addition, the two Smiths sought to recover damages against Homicide Detective Rohtert, separately, but not as a joint tort-feasor. Rohtert, as before stated, was not even present at the time Smith was shot and Rohtert in no way participated in

it. Smith's theory as to the liability of Detective Rohtert is set forth in an amended pretrial order of the court as follows:

It is also the theory of plaintiff, Fletcher Altman Smith, that:

1. Defendant Rohtert, acting on his own and through officers at his command, did direct and participate in an illegal search of plaintiff's residence and personal effects, having failed to obtain a search warrant or plaintiff's permission to search;

2. Defendants in the course of their illegal search damaged plaintiff's residence and personal belongings;

3. Defendants illegally caused certain of plaintiff's property including a late model Dodge Maxi-van to be confiscated.

Furthermore, it is the theory of plaintiff, Fletcher Altman Smith, that each individual defendant, being first sworn to uphold the laws and ordinances of Tennessee and the Metropolitan Government of Nashville and Davidson County, Tennessee, was bound to intervene on plaintiff's behalf to prevent any other officer in the vicinity or under their supervision from conducting an illegal search and seizure or in any manner violating the civil rights of plaintiff. The failure of each defendant to so intervene, creates joint and several liability on the part of each defendant.

The trouble with Smith's theory is that he was unable to support it with even an iota of evidence or law, as the shooting had already taken place and the search was in progress by other metropolitan police officers before Detective Rohtert arrived on the scene. It was dark and in the early hours of the morning. Rohtert entered through an open door and remained for about 15 to 30 minutes, at most, when he departed for the hospital to investigate the condition of Smith, who had been shot. There were many police officers there conducting the search, which included ser-

---

1. Smith was charged with reckless driving; driving under the influence of alcohol, and indicted by the grand jury for assault with intent to commit murder. At a preliminary hearing, the charges were reduced to reckless driving. He was convicted of reckless driving and fined $50.

geants, lieutenants, majors, and even identification officers, who were actually not only conducting but were in charge of the search. These officers were not employed by Detective Rohtert and he was in no way liable for their torts. In any event, under Section 1983 actions, the doctrine of *respondeat superior* is in no way applicable as I will demonstrate.

The district court found damages in favor of Smith against Detective Rohtert, in addition to those he assessed against Police Officer Heath as follows:

| | | |
|---|---|---|
| (a) | Unlawful entry and search and seizure | $ 5,000 |
| (b) | Loss of three rifles when premises were left unattended | 450 |
| (c) | Punitive damages | 5,000 |
| | Total | $10,450 |

The district court also determined that Detective Rohtert was liable to Marguerite Betty Smith, also known as, Grandma Smith, who only witnessed the shooting and was detained for a statement and allowed her damages as follows:

| | |
|---|---|
| As compensatory damages for her unconstitutional arrest and detention for several hours | $ 5,000 |
| For her nervous condition | 5,000 |
| Punitive damages | 2,500 |
| Total | $12,500 |

The district court then assessed against Detective Rohtert costs and attorney fees for Fletcher Smith and Marguerite Smith the sum of $16,574.95.

## I

### Liability

The appellant Jack Rohtert was a sworn police officer in the Detective Division of the Department of Metropolitan Police of the Metropolitan Government in Nashville, Tennessee. The Charter of the Metropolitan Government provides for the powers, duties and responsibilities of the Department of Metropolitan Police as follows:

1) The Department shall be responsible for the preservation of the public peace, prevention and detection of crime, the apprehension of criminals, protection of personal and property rights and enforcement of laws of the State of Tennessee and ordinances of the metropolitan government, and

2) The Director and other members of the metropolitan police force are vested with all the power and authority belonging to the officer of constable by common law and also with all the power, authority and duties which by statute are provided for police and law enforcement officers of counties and cities.

The Charter of the Metropolitan Government, § 16.05, in part, further provides: "... The function as principal conservator of the peace is hereby transferred and assigned to the metropolitan chief of police, provided for by article 8, chapter 2 of this Charter ..."

Detective Rohtert had worked in the Homicide Division for about seven years prior to the incident. At the time the shooting took place, Detective Rohtert was driving his police automobile elsewhere when he received a call on his car radio about the shooting which advised the location, and in response thereto, Rohtert drove alone immediately to the motel. He entered an open door. This was even conceded by the majority on page two of their opinion, which states: "When he arrived, he found the door open with the other officers inside." These officers it is claimed had previously broken into the motel, entered and were conducting the search even before Detective Rohtert arrived. There was no evidence that Homicide Detective Rohtert had anything to do with ordering the presence of the police officers who were actually conducting the search and seizure. In view of this finding by the majority, it is almost unbelievable that they could find Rohtert liable for an unlawful entry and search and seizure. Rohtert did not enter unlawfully. There is no evidence that he conducted any search or seizure. He did not steal any of Smith's guns. He did not leave the premises unattended. Rohtert was in no way responsible legally for the

acts or neglects of the other police officers. The majority agrees with the district court that Detective Rohtert is liable for the actions of the police officers who conducted the search and seizure. The statement on page 222 of the majority opinion that Rohtert by his own admission was in charge of the investigation is not entirely correct. He was of course in charge of his own investigation, and he was not accompanied by any other homicide officer. He was not in charge of the investigation by the other officers which was being conducted in full force for some time before Rohtert arrived at the scene.

Rohtert further testified:

Q. Is it correct to state that you were the homicide officer on the scene when you arrived?

A. Uh-huh.

Q. So, therefore, you were the officer in charge of the scene when you arrived?

A. Of the investigation.

Q. Did you remain the officer on the scene in charge of the investigation during the time that you were there?

A. I would say yes, with the exception of there's an old departmental policy that comes from way back that tells you that at the scene of an investigation your main officer in charge is your identification officer during the time he is processing a scene.

Q. Were you the identification officer?

A. No.

Arriving at the scene at night and in the early hours of the morning after the shooting had already taken place and the motel was filled with other police officers who were conducting the search, it is unbelievable that the district judge could find Detective Rohtert guilty of unlawful entry and search and seizure, when he did not enter unlawfully and did not conduct a search and seizure. Rohtert was not responsible for other police officers being present. They were not his employees, and he had no authority to order them to depart. They were undoubtedly present on orders of the police department. Rohtert, as before stated, entered the motel through an open door. He did not break into the motel in order to enter it.

Detective Rohtert testified as follows:

Q. Where were you and what kind of—how did you get notice of this event?

A. Through the police radio, dispatcher.

. . . .

Q. When you got this information, however you got it, what did you do?

A. Went to the scene.

. . . .

Q. When you arrived there, sir, what did you observe?

A. A large amount of police officers.

Q. What did you do?

A. I talked with Officer Heath as far as what occurred. He did advise me what occurred. I requested identification team to preserve the crime scene, take whatever evidence is necessary, and evaluate the situation the best I could at the time. If my memory serves me correctly, I personally called General Hospital to request the condition of the man that did leave the scene and found out his condition to be very serious, and it was my choice, I felt as though I should go to the hospital to see if there was a dying declaration.

Q. Approximately how long were you out there at the motel area?

A. I would say the maximum would probably be about thirty minutes, the minimum would be say, fifteen.

Q. Did you see Mrs. Betty Smith on that trip?

A. Yes, sir.

Q. Did you order her to go downtown?

A. No, as far as ordering, per se, no. I asked another police officer which I don't know his name, to get transportation for the lady to go to the Homicide Office.

We are not called upon to determine whether the other police officers who conducted the search and seizure could be held

liable for unlawful search and seizure, as they were not sued and are not parties to this appeal. They could undoubtedly rely on the fact that the search and seizure took place in the early hours of the morning right after the shooting, when it would be difficult if not impossible to obtain a search warrant and that their search took only a very short time. *Cf. Michigan v. Tyler,* 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978); *Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978).

The general rule is that the doctrine of *respondeat superior* does not apply in actions under 42 U.S.C. § 1983. The mere fact that a supervisor has general authority over a subordinate is not sufficient to impose liability for acts of the subordinate. In order for a supervisor to be held liable under § 1983, he must personally participate in the acts complained of, or at least affirmatively authorize or direct them. In the present case, Rohtert was not even a supervisor.

There are a large number of cases which so hold:

*Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 694 n.58, 98 S.Ct. 2018, 2037 n.58, 56 L.Ed.2d 611 (1978), citing as authority *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976).

*Ellis v. Blum,* 643 F.2d 68 (2d Cir. 1981).

*Vinnedge v. Gibbs,* 550 F.2d 926 (4th Cir. 1977).

*Thompson v. Bass,* 616 F.2d 1259 (5th Cir. 1980).

*Hays v. Jefferson County, Kentucky,* 668 F.2d 869, 872–74 (6th Cir. 1982), *cert. pending.*

*Adams v. Pate,* 445 F.2d 105 (7th Cir. 1971).

*DeShields v. United States Parole Commission,* 593 F.2d 354 (8th Cir. 1979).

*Lessman v. McCormick,* 591 F.2d 605 (10th Cir. 1979).

*Freeman v. Trudell,* 497 F.Supp. 481 (E.D.Mich.1980).

*Knipp v. Weikle,* 405 F.Supp. 782 (N.D. Ohio 1975).

*Veres v. County of Monroe,* 364 F.Supp. 1327 (E.D.Mich.1973), *aff'd,* 542 F.2d 1177 (6th Cir. 1976).

The best and most thorough discussion which I have found is in the recent case from our court, *Hays v. Jefferson County, Kentucky, supra.* The court summed up as follows, 668 F.2d at 874:

The result of *Rizzo* and subsequent cases in the lower federal courts applying the standards it announced is that a failure of a supervisory official to supervise, control, or train the offending individual officers is not actionable absent a showing that the official either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.

Cases specifically involving liability of police supervisors for acts of subordinates have been held as follows:

Police supervisory officers cannot be held liable for failure to prevent misconduct by subordinate absent a showing of direct responsibility for the improper action. In *Wilson v. Beebe,* 612 F.2d 275 (6th Cir. 1980), we held in an opinion by Chief Judge Edwards and Judges Lively and Engel:

The complaint in this case did not allege as to the two State Police officials that they played any personal role in the shooting incident. It does allege that they failed in their supervisory and training functions to prepare Officer Beebe properly for the making of the arrest involved.

It appears that the United States Supreme Court has held that a § 1983 action will not lie against police supervisory officers for failure to prevent police misconduct, absent a showing of direct responsibility for the improper action. *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *Kostka v. Hogg,* 560 F.2d 37 (1st Cir. 1977); *Scheurer v.*

*Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

Police supervisory personnel are not liable for damages to one injured by police misconduct absent direct personal participation. *Sanberg v. Daley,* 306 F.Supp. 277 (N.D.Ill.1969).

It is not sufficient to hold a chief of police liable for the wrongful acts of his subordinates merely because the wrongdoer was acting under the general supervision of the chief. He must directly and personally participate in the alleged misconduct. *Richardson v. Snow,* 340 F.Supp. 1261 (D.Md.1972); *Fanburg v. City of Chattanooga,* 330 F.Supp. 1047 (E.D.Tenn.1968).

*Cf. General Building Contractors Association, Inc., Petitioner v. Pennsylvania, et al.,* —— U.S. ——, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982), 50 L.W. 4975, 4979, 4980, 4981, 4982.

It is clear that the Memorandum of the district judge and the majority opinion, not only conflict with the weight of authority, but also with the two opinions of this court in *Wilson v. Beebe,* 612 F.2d 275 (6th Cir. 1980) and *Hays v. Jefferson County, Kentucky,* 668 F.2d 869 (6th Cir. 1982). The doctrine of *stare decisis* is supposed to be binding on all of us.

There was no basis for granting punitive damages in favor of either of the plaintiffs against Detective Rohtert or for attorney fees. At all times, Detective Rohtert acted in good faith according to the overwhelming evidence. He did suggest to Marguerite Smith that she go to a back room during the investigation, but this was for her own convenience and protection. He did ask her to go to the homicide headquarters and provided her with transportation, as it was necessary for Rohtert to procure statements of the witnesses immediately and before they could be changed or interfered with. She procured transportation to return to the motel from a friend. If she had preferred to ride to the headquarters for the statement with a friend instead of in the police car, she should have requested that privilege from Detective Rohtert, which she neglected to do. So far as to her treatment by Detective Rohtert she testified:

Q. You were not mistreated by either Detective Rohtert or any one else?

A. No.

Supp. App. P. 56.

Relative to the award of $5,000 for her nervous condition, without trauma, there was no evidence that this was caused by Detective Rohtert. All he did was to take a statement from her after the shooting. She consulted with a doctor who did not testify. It should be remembered that she and a minor child were in very close proximity to the actual shooting, and she was severely frightened because of fear that she or the child might be shot. This could very well have caused her nervousness entirely. If she really had claimed that the taking of her statement and not the shooting which she closely witnessed caused her nervous condition, she should have offered medical testimony to prove it which she neglected to do. At most even if it were found that there was a technical violation of her rights in taking her statement, she would only be entitled to nominal damages.

## II

In my opinion, the district judge in making his findings garbled the facts and misapplied the law. Such factual findings do not prevent appellate review to which Detective Rohtert was justly entitled to receive, but has received only an erroneous review. The district judge even questioned Detective Rohtert's motive in making the investigation, stating that it was to justify the shooting. This was error as Detective Rohtert in making the investigation merely responded to a call to duty received by radio from headquarters.

Detective Rohtert was entitled to the defense of good faith and qualified immunity which was not accorded to him. *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Ford v. Wells,* 347 F.Supp. 1026 (D.C.Tenn.1972), Judge Neese; Annotation 1 ALR Fed. 519; *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)

qualified immunity; *Wilson v. Beebe, supra;* slip opinion Supreme Court of the United States in *Nixon v. Fitzgerald,* 1982, 457 U.S. ——, page ——, 102 S.Ct. 2690 page 2694, 73 L.Ed.2d 349 (1982); *Harlow v. Fitzgerald,* 457 U.S. ——, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), fn. 34, 35.

In *Nick Sanborn and John D. Barkeloo, Petitioners v. Dennis M. Wolfel,* —— U.S. ——, 102 S.Ct. 3476, 73 L.Ed.2d 1363 (Aug. 2, 1982), the Supreme Court granted certiorari and summarily vacated the judgment of the Sixth Circuit and remanded in the following order in a suit erroneously awarding damages against parole officers of the State of Ohio and failure to award them qualified immunity:

ON CONSIDERATION WHEREOF, it is ordered and adjudged by this Court that the judgment of the Court of Appeals in this cause is vacated with costs, and that this cause is remanded to the United States Court of Appeals for the Sixth Circuit for further consideration in light of *Harlow v. Fitzgerald,* 457 U.S. ——, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). See *Butz v. Economou,* 438 U.S. 478, 504, 98 S.Ct. 2894, 2909, 57 L.Ed.2d 895 (1978) (deeming it "untenable to draw a distinction for purposes of immunity law between suits brought against state officials under § 1983 and suits brought directly under the Constitution against federal officials").

### III

In sum, it is submitted that the cases against Homicide Detective Rohtert are much ado about nothing. Detective Rohtert was soaked $39,524.95 in damages by the district judge and all he did was to perform alone his sworn duty as a homicide detective, in responding to the call from headquarters to make an investigation. When he arrived at the scene, the shooting had already taken place and the motel was already filled with police officers engaged

in making an investigation. If there was an unlawful search and seizure, which I doubt, it had already taken place. Detective Rohtert had nothing to do with ordering the police officers to the scene, as they were sent out by headquarters and were engaged in the search and seizure when Rohtert later arrived. Rohtert did not break and enter into the motel. He entered through an open door. He remained there from 15 to 30 minutes, and then went to the hospital to check on the Plaintiff Smith, who could not be interviewed. Rohtert then went to the homicide headquarters and took statements from the witnesses. Rohtert did not harm or injure anyone. It is clear from the authorities relied on herein that Detective Rohtert cannot be held liable for any unlawful activities of the other police officers who conducted the search and seizure or for any torts which they committed.[2] These police officers were not Rohtert's employees. They were not employed in the homicide division and even if they were, Rohtert would not be responsible for their activities, because he did not ever supervise, let alone participate in any manner, with their activities. The doctrine of *respondeat superior* has no place in § 1983 actions even in respect to servants, and the other police officers were not servants of Detective Rohtert.

This appeal is governed by our decision in *Wilson v. Beebe,* 612 F.2d 275 (6th Cir. 1980) and *Hays v. Jefferson County, Kentucky,* 668 F.2d 869 (6th Cir. 1982). The majority opinion conflicts with the decisions in these cases which were not even cited by the majority. The district court erred in holding Detective Rohtert liable for the torts of the other police officers.

In my opinion, Plaintiff-Appellee Fletcher Altman Smith, who caused all this trouble, was fully compensated for any damage he sustained in the award of $140,223.70, which was made to him against the defend-

---

**2.** The majority erroneously described the other police officers as Rohtert's subordinates, although they were employed in a different de-

partment and had not been ordered to the scene by Rohtert.

ant Officer Don Heath. The judgment entered in Smith's favor against defendant police officer Don Heath operated as a res judicata and collateral estoppel, not only as to the specific claims which he asserted against Heath, but also as to all those which he might have asserted against Heath such as unlawful entry, search and seizure, and loss of three rifles.[3] *James v. Gerber Products Co.,* 587 F.2d 324, 328 (6th Cir. 1978); *Coogan v. Cincinnati Bar Association,* 431 F.2d 1209 (6th Cir. 1970). Smith is not entitled to recover from Rohtert for the claims he asserted or might have asserted against Heath, which were amply provided for in his judgment against Heath. It was Heath and not Rohtert who broke and entered into Smith's motel without obtaining a search warrant. Rohtert entered later through an open door while the search and seizure of the other officers was in full progress.

In my opinion, the claims asserted by the two Smiths against Rohtert are frivolous. But this is not the end if Plaintiff-Appellee Smith prevails in this court. His attorney will then seek additional attorney fees from Detective Rohtert for having prevailed on appeal.

I would reverse the judgment against Detective Rohtert and remand with instructions to dismiss the complaint.

---

**3.** It is noteworthy and unbelievable that Smith did not seek to recover damages from the real wrongdoer, Officer Heath, for breaking and entering into his motel and the bedroom thereof. Instead, he sought to and did recover such damages from Homicide Detective Rohtert.

Actually Smith was damaged only by the unlawful entry of Officer Heath and was in no way damaged by the lawful entry later by Rohtert through an open door, when the search and seizure by the other police officers had been in full force and effect for some time.