798 F.2d 1414
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Geraldine HARRIS, Willie G. Harris, Bernadette Harris,
Plaintiffs-Appellees,
v.
Stanley CMICH, et al., Defendants,
City of Canton Ohio, Defendant-Appellant.
 No. 85-3314.
 United States Court of Appeals, Sixth Circuit.
 July 2, 1986.
 
 Before LIVELY, MERRITT and JONES, Circuit Judges.
 PER CURIAM.
 
 
 1
 The City of Canton appeals from a judgment on a jury verdict finding the City liable under 42 U.S.C. Sec. 1983 for causing Geraldine Harris to be denied medical care while incarcerated.
 
 
 2
 Mrs. Harris, a fifty-two-year-old black woman, was driving her teenage daughter to school when she was stopped by a Canton police officer for speeding. The police officer ultimately arrested her because, as he claimed, she became uncontrollably upset and uncooperative. Mrs. Harris was put into a patrol wagon by two officers who arrived to transport her to the police station. She testified that she was pushed and thrown about violently, and jabbed in her ribs. The officers said a minimal amount of force was used and that Mrs. Harris was lifted and placed in the vehicle because she could not or would not walk on her own.
 
 
 3
 When the vehicle's door was opened at the station, the shift commander, Captain Maxson, was present. He had been notified by the officers of a possible need for his presence. He testified that Mrs. Harris "was just lying there," which was unusual because "I don't know of anybody that rides in a wagon on the floor." Captain Maxson thought Mrs. Harris might need medical attention, and asked her if she needed a doctor or medication. She did not respond to the question, but asked incoherently about a person named "Ronnie." No medical care was ordered.
 
 
 4
 During booking, Mrs. Harris was standing against a wall when she suddenly slumped to the floor. Officers helped her into a chair, but Harris slumped to the floor again. She was put back in the chair, but again fell. Captain Maxson testified that Mrs. Harris was left on the floor for a short time, up to ten minutes, to avoid further falls. He explained that emotional behavior is common upon incarceration, and that he and officer John Daianu believed that Mrs. Harris was merely excited and would calm down if left alone and permitted to see her family, as most arrestees do. The City argued at trial that she chose to slump each time and was fully conscious and aware of her actions.
 
 
 5
 Captain Maxson testified that after a few minutes in Booking, Mrs. Harris was taken to a cell. She testified that while she was incarcerated, she was twice taken from her cell for searches of her person. After bond procedures were completed, Mrs. Harris was released at about 9:00 a.m., having been at the city jail for about 30 to 40 minutes. A little more than an hour had elapsed since she was stopped while driving.
 
 
 6
 Mrs. Harris's family had her taken to Timken Mercy Hospital by ambulance from the jail. Mrs. Harris was hospitalized for one week. She was diagnosed as suffering from gross stress reaction, anxiety and depression, with symptoms including immobility and respiratory difficulty. Psychiatric therapy was necessary periodically for more than a year.
 
 
 7
 Mrs. Harris, together with her husband and daughter, brought a civil action against the police officers, city officials and the City of Canton under 28 U.S.C. Secs. 1981, 1983, 1985-86, and the Fourth, Fifth, Eighth, Thirteenth and Fourteenth Amendments. She claimed the following constitutional violations: unlawful seizure, cruel and unusual punishment, deprivation of liberty and physical well-being without due process, failure to provide equal protection of the law due to race, and unlawful search. In addition to these federal constitutional violations, Mrs. Harris claimed false imprisonment, assault and battery under state law. The complaint also charged the police with assaulting and battering the teenage daughter who was a passenger in the car with her.
 
 
 8
 Damages were based on physical and emotional injuries, pain and suffering, treatment expenses, loss of services to Mr. Harris, exemplary damages, and legal costs and fees. Compensatory damages of one million dollars and exemplary damages of two million were sought. In addition, plaintiffs requested injunctive and declaratory relief in regard to the police policies and practices. The suit was dismissed due to untimely filing under the applicable Ohio statute of limitations, but on appeal the Harrises prevailed and the case was remanded for further proceedings. Harris v. City of Canton, 725 F.2d 371 (6th Cir. 1984).
 
 
 9
 A jury trial was held. In addition to the testimony described above, there WAR evidence presented as to the policies of the Canton police department in regard to medical treatment for prisoners. Section 334.7 of the Canton Police Regulations provides as follows:
 
 
 10
 He [the jailer] shall, when a prisoner is found unconscious or semi-conscious, or when he or she is unable to explain his or her condition, or who complains of being ill, have such person taken to a hospital for medical treatment, with permission of his supervisor before admitting the person to the City Jail.
 
 
 11
 Former police Chief Wyatt testified to the department's usual practice for implementing section 334.7. He stated that shift commanders are authorized to make medical decisions under section 334.7 in their sole discretion based on personal observations. In the face of this grant of discretion, there was no evidence offered that the City provided.any training or instructions to shift commanders, other than minimal first aid instruction, to prepare them for making such determinations.
 
 
 12
 At the close of the evidence, the court denied the defendants' motion for directed verdict. The jury rejected aH the Harrises' claims except one: the jury found that Mrs. Harris was unreasonably denied medical attention while incarcerated at the city jail, and it awarded her $200,000 against the City of Canton. The court denied the city's motion for remittitur, new trial, or judgment n.o.v., and this appeal followed.
 
 
 13
 The City raises numerous issues, including the insufficiency of plaintiffs' evidence to raise a jury question on her claim of deprivation of medical attention, and improper instructions to the jury on Harris's theories of municipal liability.
 
 
 14
 In regard to her claim of an unconstitutional deprivation of medical care, see Estelle v. Gamble 429 U.S. 97, 104-05 (1976); Westlake v. Lucas, 537 F.2d 857 (6th Cir.1976), Mrs. Harris contended that given her obvious signs of anxiety, hyperventilation and loss of ambulatory function, the officers should have referred her for medical care. She said that Maxson never even took her pulse in order to determine whether she needed care. Furthermore, she testified that the officers laughed at her and ridiculed her. Harris based municipal liability for the deprivation of medical care on two theories:(1) inadequate training by the City of its police officers, which proximately caused the deprivation; and (2) the participation of supervisory personnel in the deprivation.
 
 I. Inadequate Training
 
 15
 Where a municipality has wholly failed to train or has been grossly negligent in training its police force, it may be concluded that there was a municipal custom that allowed or condoned certain violations of constitutional rights by police. E.g., Rymer v. Davis, 754 F.2d 198, 201 (6th Cir.1985), vacated, 105 S.Ct. 3518 (1985), reinstated on remand, 775 F.2d 756 (6th Cir.1985); 668 F.2d 869, 874 (6th Cir.1982). To succeed in a claim that a municipality is liable for failure to train its police force, the plaintiff must prove that the municipality acted recklessly, intentionally, or with gross negligence. See Hays v. Jefferson County, 668 F.2d at 872 (6th Cir. 1982) (holding that "simple negligence is insufficient" to support liability of municipalities for inadequate training and supervision of individual officers). In addition, the plaintiff must demonstrate that the municipality's inadequate training of its officers was causally connected to the deprivation, which means proving that the lack of training was so reckless or grossly negligent that deprivations of persons' constitutional rights were substantially certain to result. Rymer, 754 F.2d at 201.
 
 
 16
 Harris's theory of grossly inadequate training was based on the fact that the police had an established policy of allowing shift commanders unfettered discretion under rule 334.7 to make the decision to refer a prisoner to the hospital based on their personal judgment and perceptions, coupled with the fact that these commanders were given no training or guidelines for making this decision. The former police chief testified to the discretion in decision-making, and the city could not show any evidence of adequate training. Mrs. Harris's evidence on these two facts thus raised a valid jury issue of municipality liability under Rymers and Hays for grossly negligent failure to train. The district court did not err in finding that there was sufficient evidence to submit that theory to the jury and in denying a directed verdict. We have reviewed the court's instructions on this theory of liability, and we find them adequate.
 
 II. Participation of Supervisory Personnel
 
 17
 Harris's suit was alternatively based on her claim that, when a supervisory officer actually participates in the deprivation, the City is liable for his acts because he is a supervisor. That position is incorrect. Mrs. Harris relies on the case of Smith v. Heath, 691 F.2d 220 (6th Cir.1982), in which this court states as follows:
 
 
 18
 The district judge specifically found that [the supervisory officer] was directly responsible for and personally participated in the deprivation of the Smiths' constitutional rights. He both subjected and caused the appellees to be subjected to the deprivation of their civil rights and is thus liable under section 1983.
 
 
 19
 Id. at 225. This passage provides for liability under section 1983 when the supervisory officer participated in the wrongdoing. In Smith, however, the officer was appealing a judgment finding him personally liable. Municipal liability was not at issue. Id. at 221.
 
 
 20
 It is clear that for the City to be liable, there must be a City policy or custom that causes the deprivation. See, e.g., Hays, 668 F.2d at 872-73. In Hays, both the municipality and the individual supervisors were sued. The court first discussed the personal liability of the supervisory officers at length, explaining that their liability cannot be based merely on the fact that they had the right and duty to supervise the officers who allegedly committed the violation of the Constitution. Their individual liability must be based on their own grossly negligent conduct. Id. In other words, the supervisory officers could not be found personally liable on the basis of the doctrine of respondeat superior. Immediately following this discussion of the liability of the supervisory officers, the court stated that the liability of the municipality must also be based on its own conduct, that is, on a municipal policy or custom rather than on the acts of its employees:
 
 
 21
 The Rizzo case requires that there must be a direct causal link between the acts of individual officers and the supervisory defendants. Rizzo v. Goode, 423 U.S. at 370-71, 96 S. Ct. at 60304. It is essentially this same concept that requires that the implementation or execution of a governmental policy or custom be shown before liability can be imposed on a municipality. Monell v. Department of Social Services, 436 18, 96 L.Ed.2d 611 (1978).
 
 
 22
 Hays, 668 F.2d at 872. While it is clear that a city "can act only through its principal officials," id. at 875, a supervisor does not automatically render the city liable under section 1983 merely by engaging in misconduct. If he is a policy-maker and his act may be construed as setting or implementing a policy, then the act of a supervisor may render the city liable under certain circumstances, See Pembauer v. City of Cincinnati, 106 S. Ct. 1292, 1300 (1986), but we have no allegations or proofs of such a theory before us.
 
 
 23
 We find that Harris's alternate theory of municipal liability was legally defective. It should not have gone to the jury, and thus the question of the sufficiency of the evidence on this theory of liability is irrelevant. The pertinent part of the jury instructions is as follows:
 
 
 24
 Accordingly, the burden of proof is upon Geraldine Harris to prove, by a preponderance of the evidence, that for the City of Canton and its police department to be held liable under Section 1983, and/or its supervisory personnel either in some way participated in the actual misconduct, if any, or failed to supervise its police force and that such supervision was so reckless, grossly negligent, inadequate, and the result of deliberate indifference that police misconduct and violations of citizen's rights were probably certain to result. Under such conditions, and only under such conditions, the City of Canton may fairly be determined as acquiescing in and implicitly authorizing such violations.
 
 
 25
 ....
 
 
 26
 Thus, if you find from the preponderance of the evidence that the city, acting through its police department and its supervisory personnel, actually participated in the alleged misconduct, you may conclude that the city and its supervisory personnel acquiesced in that misconduct and your finding will be for Geraldine Harris. Otherwise, you shall find in favor of the City of Canton.
 
 
 27
 ....
 
 
 28
 You are further instructed that you may not return a verdict against the City of Canton if you believe, from a preponderance of the evidence, that Mrs. Harris was denied medical treatment by a Canton police officer merely because of the fact that said police officer was an employee of the City of Canton. In other words, if you believe that the Canton Police Department adequately supervised, trained and controlled the police officers, then you shall return a verdict for the City of Canton even though you may believe, from a preponderance of the evidence, that an individual police officer in the employment of the city knowingly denied medical treatment to Geraldine Harris.
 
 
 29
 Tr. at 4-388 -90 (emphasis added). The City argues that this instruction impermissibly allowed the jury to find the City liable for the misconduct of its employees under the doctrine of respondeat superior. See Monell v. Dept. of Social Service 436 U.S. 658 (1978).
 
 
 30
 In the first sentence of the passage quoted above, the part of the sentence following the word "or" provides a correct basis for municipal liability under Mrs. Harris's first theory of liability, discussed above; however, the part preceding the "or" provides an alternate basis for municipal liability that is incorrect. This instruction allows a finding of municipal liability merely because its supervisory personnel did a bad act, with no need to find that the city was a bad actor through a city policy or custom. This was error. We cannot know on which basis of liability the jury found the City liable, and accordingly, we must reverse.
 
 
 31
 We recognize that the trial court gave a correct statement of Monell when it stated, in the final quoted paragraph, that the City was not liable merely for employing officers who acted wrongfully. We conclude, however, that the instructions, read as a whole, could have misled and confused the jury as to the applicable principles of law.
 
 
 32
 The City has raised several other issues. We have considered them, and find no other error. The judgment of the district court is REVERSED and this case is REMANDED for a new trial.
 
 
 33
 MERRITT, Circuit Judge, concurring in part and dissenting in part.
 
 
 34
 I concur in Part II of Judge Jones' proposed opinion for the Court. On Part I respecting the claimed unconstitutionality of the City's policy of handling the medical needs of the prisoners, I do not find the policy contained in Sec. 334.7 of the Canton Police Regulations to be unconstitutional, nor do I find a custom of unconstitutional application of the policy. I read Judge Jones' opinion for the Court to conclude that a delegation of unregulated or undirected authority to the jailor to make decisions on the need for medical care raises a colorable substantive due process claim suitable for submission to the jury on remand. I cannot think of any way that the City could more specifically regulate or direct the exercise of this authority without providing paramedical officers or medical specialists of some type at the jail.
 
 
 35
 The exercise of such authority respecting medical care must be delegated to jailors or other intake officials if it is to be effectively exercised at all by the City. We should not erect a due process requirement that cities must have paramedical officers or other trained medical specialists who exercise some type of professional judgment at the jail. It seems to me that ordinary common sense review and handling of cases on an individual basis by intake officers should pass constitutional muster, Intake officers must meet the "deliberate indifferent standard" of Estelle v. Gamble, 429 U.S. 97 (1976), but I see no need to embed within this standard a subsidiary special training requirement. Nor do I believe that the case should be submitted to a jury under a general charge so that the jury is allowed to create such a requirement sub silentio as a part of its general verdict.